Good morning, Your Honors. May it please the Court, my name is Jonathan Edelstein. I represent the appellant, Melanie Ferreira. I've appealed a number of cases in State court, Federal court, where a defendant was pro se, but I've never seen a case like this one where a pro se defendant doesn't know she's representing herself. My research didn't turn up such a case. Evidently, the government's research didn't either because their brief doesn't cite a case with facts like this one. This is a case where after the initial phoreticology, on a number of occasions, not just once, before trial as well as during trial, Ms. Ferreira repeatedly stated she's receiving ineffective assistance, she wants effective assistance of counsel, she says she's not representing herself, she's not her own attorney, she's just speaking for herself. You know, when asked, do you want to proceed without counsel, she says, at this moment. All of that is indicative of a finding that she was competent when she made the decision to forego counsel, which was offered again and again. Well, Your Honor, that was in the initial phoreticology. And our position also, as stated in the brief, is that the initial colloquies were in front of Judge Smith or in front of Judge Seibel? In front, both of them, both of the initial colloquies, because there was not a sufficient discussion of the range of punishments, which is one of the topics that both this Court and other courts have said, you know, need to be covered in some way, even if not in, you know, any magic words. But even if the initial colloquy was adequate, even if she was competent at that time, she then repeatedly made statements that called that into question. And the Williams case in this Court and the Rush case have, you know, both said that even once asserted, the right to self-representation may be waived through conduct, words or behavior, indicating that one is vacillating. And certainly where somebody is saying, I want effective assistance of counsel, I'm receiving ineffective assistance of counsel, I'm not representing myself, I'm just speaking for myself, and where she says this repeatedly, this is obviously a defendant who doesn't know and doesn't understand. Do you recognize that there's a constitutional problem with depriving a defendant of the right to defend himself or herself? Oh, absolutely. And that we would have a different case and perhaps a more serious case if Judge Seibel, in addition to saying representing yourself is a monumentally bad idea, had deprived her of the ability to represent herself. Well, Your Honor, obviously in any Faretta situation, there is, you know, there are constitutional issues on both sides. Exactly. That any court is going to face a dilemma of, you know, do I – which ruling is going to be a violation of her constitutional rights. But, Your Honor, that's why we have courts, that's why we have judges, is because they have to make these hard decisions. Your client didn't even want standby counsel. The court forced her to have standby counsel. That was the case at the beginning. And then later on, she repeatedly requested the effective assistance of standby counsel. So it's apparent. You're talking about cases, if I understood you correctly, cases in which a defendant forfeited, waived or forfeited the right to represent herself and was forced to have counsel, right? You're no longer – your behavior makes you no longer entitled to represent yourself. You're going to have counsel. Correct. And this case – and this court – This is a different kind of a case here, where you're saying that because after clearly expressing the desire to represent herself and not have counsel, you're saying that she can then game the system by making confusing statements and claiming I'm not being properly represented when she's representing herself and just throw the whole thing into confusion. Well, Your Honor – The cases you're talking about are cases where the person was complaining because counsel, unwanted counsel, had been inflicted on her because of her behavior, which was thought to be a waiver or forfeiture of the right not to represent herself. Well, Your Honor, if there had been an inquiry by the trial court or by any – or by the district court pretrial, and if the district court had made a finding of fact that, no, she's not sincere about these statements, she's gaming the system, then I think there might be a sufficient basis to affirm. However, there was no such inquiry made. Certainly, the fact that Ms. Ferreira has rigid thought patterns is very apparent from the record. I would submit that there's no basis on this record to find that she was gaming the system. Every basis to find that – The system, intentionally or not, is not really relevant. My point is, she competently made the choice to go it alone without counsel, to represent herself. And now you're saying that because, repeatedly through the trial, she made confusing statements seeming to think that she was being represented, arguing that she was being inadequately represented, things like that, that she was deprived of her right to have an attorney representing her. Well, that these statements, which were both before and during the trial, were called into question the finding that was made at the original inquiry, whether she really is as competent as she was originally found to be. What statements are we talking about during the trial? Well, prior to the trial, there were at least two occasions. During the trial, there were at least two. How long was the trial? The trial was, I believe, four or five days. Were there any motions or any other things that she could have done that she didn't do? Well, she did at one point, you know, claim ineffective assistance of standby counsel. She tried to fire her standby counsel and get new counsel, which, you know, she would believe to be more effective. Any substantive motions or any other acts that she didn't do or file because she was under the mistaken impression that she was not representing herself? No. Well, I don't. You don't know. I don't know, you know, what might have what what motions an attorney might have made in account of actual world or the trial. Two statements during the trial that suggested that she didn't fully understand after the colloquy from Judge Seibel that she was representing herself. Yes, Your Honor. We discussed them both in the original brief and pages four and five of the reply brief. If I may, Your Honor, I do see I'm out of time, but I would like to briefly address the evidentiary rulings, if I may. With respect to the accountant, Justin Coons, this was not relevant to the issues of knowledge or intent. This was in 2003. Ms. Ferreira is a first-time, you know, has business income for the first time, apparently has a discussion with the accountant in which he says, well, I shouldn't have to report cash income that's not reported on a 1099. I should be able to take certain deductions. He tells her, yes, you do have to report it, and she does. None of this evinces an intent to defraud the IRS. That tells her that she's supposed to report income, right? Correct. And if this, the charges in this case had involved non-reporting of income. Intent was an issue in this case. Intent, yes. Intent was an issue in this case. And if the charges in this case had involved non-reporting of income, then I think that the government could have legitimately pointed to that discussion and said, yes, in 2003 she was made aware that she had to report income. But the charges in this case didn't relate to that. In addition, there was various literature which did not, you know, contained various anti-government opinions, but did not contain any advice on how to break the tax laws or on what the tax laws were. This was, you know, the jury was invited here to infer knowledge and intent from her political opinions. Yeah, but how prejudicial is that? Well, I would submit it's highly prejudicial because the defendant elicited evidence that she did not have a guilty mind here because she had been duped by various seminars. And this Court, I'm sure, has handled other cases involving these seminars and others very similar, that a lot of people get duped by these seminars. She submitted that evidence to show that she did not have guilty intent or guilty knowledge and that, you know, therefore, this was a closely contested issue where improper evidence admitted on that subject was highly prejudicial. Was this testimony designed to rebut that? Your Honor, there was — well, this testimony was designed to prove that she had an intent to defraud. And as such, yes, it was designed to rebut any inference that she didn't have an intent to defraud. It's — that's precisely what this testimony was admitted for, to show that because she had had some kind of conversation with an accountant about a completely different tax matter and that, you know, ultimately she did what she was supposed to do and because she had anti-government literature, therefore, she intends to defraud the IRS. I would say in light of the totality of the evidence in this case, that's highly prejudicial. Thank you, Your Honor. Roberts. Mr. Folley. Nicholas Folley, Jr. May it please the Court, my name is Nicholas Folley and I'm an assistant United States attorney in the Southern District of New York. I represent the United States on this appeal. The defendant in this case was convicted following a fair trial, free of error, after she knowingly and voluntarily waived her right to counsel. I'd like to first address the point that the defendant just made regarding whether or not the defendant vacillated as to the issue of self-representation. Starting from the very beginning of this case, Magistrate Judge Smith, as well as the defendants, were exceedingly patient with the defendant in giving her repeated and thorough paretta inquiries, ensuring that she was making a knowing and intelligent decision with respect to representing herself. Defendant has pointed to various statements that were made from the outset of this case through the trial and selected them without providing any context in which those statements were made by the defendant. Starting with her presentment on April 23rd, Magistrate Judge Smith informed Ferreira that if she decided to represent herself and was eventually convicted, she would not be able to challenge her conviction on the ground that she should not have been permitted to represent herself. The defendant confirmed her understanding of that distinction four separate times. So I think the issue that's raised by your adversary is that after all of these inquiries, there were two statements certainly during the trial that suggested that maybe she no longer understood that she was representing herself. What about those statements? Your Honor, it's somewhat unclear what the defendant meant by some of those statements. There was a statement in which she said she was not pro se, but rather she was speaking for herself. The district court made sure to follow up in asking her what she meant. The government, if I remember, I think that this is the case, expressed some concern about her ability to represent herself, which initially may have prompted the standby counsel, but even subsequent to the initial Ferreira inquiry, continued to express concern. Is that right? That's correct, Your Honor. That being said, the district court was exceedingly thorough in giving repeated inquiries as to that very issue and ensuring that the defendant's responses made it clear that she would like to continue to represent herself. So there were subsequent statements after she said she was not in fact pro se. The Court specifically inquired on that issue. She said she wanted to continue to represent herself. She wanted to continue to be her own advocate. And, Your Honor, throughout the proceedings, the district court repeatedly and clearly ensured that the defendant wanted to continue to be her own attorney. Your adversary, I think, at the end of his argument, made clear that the complaints that she made were about the advice she was receiving from her standby counsel. Complaining about what your standby counsel is doing or not doing is not the same thing as expressing a view that you no longer want to be representing yourself. That's correct, Your Honor, and that's an important distinction. There is no right to effective representation with respect to standby counsel, and in addition to that, she was not asserting that she no longer wished to be her own advocate in those proceedings. Unless the Court has any further questions, we'll rest on our brief. Thank you. We'll hear Ruben. Your Honor, first of all, regarding the last point my adversary made regarding the complaints about the standby counsel, I think the issue here is not only that complaints were made about standby counsel, which often happens in pro se cases, but the way that those complaints were couched, that Ms. Ferreira repeatedly talks about it in terms of I am receiving ineffective assistance of counsel, I would like effective assistance of counsel. She does not appear to understand from this that she's outside the umbrella of ineffective assistance of counsel. She believes that, you know, although she's speaking for herself, she still has counsel in some respect. And this is not only during trial. This is two occasions prior to trial, and if my adversary says it's somewhat unclear what the defendant meant, then I would certainly agree that on some occasions this is true, where, you know, for instance, December 2, 2013, where . . . If she didn't want to represent herself anymore, that's not a very difficult thing to explain. Judge, I don't want to represent myself anymore. I want a lawyer. That's pretty easy to say. So you're saying to us that because she expressed dissatisfaction with what standby counsel was doing, who she didn't want to have there anyway, that we should be content to be representing herself and wanted to have a lawyer appointed to represent her when she could just so easily have said, I want a lawyer? Well, Your Honor, I believe when she said, I want effective assistance of counsel, then that's exactly such a request, that, you know, it may not be in the same words that Your Honor stated, but . . . They're real complicated words. I want a lawyer to represent me in this case. I don't want to represent myself anymore. I know I asked for that at the start. I no longer want it. If a court isn't required to use magic words, neither is a defendant. I want ineffective assistance of counsel. Comprehensible words, comprehensible words. If a court said to the defendant, blah, blah, blah, blah, blah, that would not be an effective Faretto warning. It's got to communicate that the basic message. I would submit that the words, I want effective assistance of counsel, communicates a basic message. But you're assuming that she's using terms of art and she's pro se and she's not a lawyer. So I don't think the judge is required to assume that she's using a term of art, meaning that I have a lawyer or I need a lawyer and I'm getting ineffective assistance. She could mean that the assistance being given by the standby counsel is not up to what she wanted. Sotomayor Well, Your Honor, I think that with a pro se defendant, whether or not a court is required to assume that she's using a term of art, I think that there's a well-settled rule that arguments made by pro se litigants must be construed to include the strongest arguments that can be inferred from the words. And that at the very least, an inquiry was necessitated at that point in time. If there's nothing further, I'll rest on the briefs. Sotomayor Thank you. Thank you both.